IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**

**April 25, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0583

In Re:  J.S. and D.S.

AND

No. 13-0567

In Re:  D.S., B.S., I.S., F.S., and M.S.

Appeal from the Circuit Court of Fayette County
The Honorable John W. Hatcher, Jr., Judge
Case Nos. 12-JA-74 and 12-JA-20 through 25

AFFIRMED

Submitted:  March 5, 2014
Filed:  April 25, 2014

Jennifer D. Hewitt, Esq.
Fayetteville West Virginia
Counsel for Petitioner Mother

James Adkins, Esq.
Assistant Public Defender
Fayetteville, West Virginia
Counsel for Petitioner Father

Patrick Morrisey, Esq.
Attorney General
Angela Alexander Walters, Esq.
Princeton, West Virginia
Counsel for Respondent DHHR

Thomas A. Rist, Esq.
Rist Law Offices, LC
Fayetteville, West Virginia
Guardian ad Litem for Children

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."  Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      "A trial court's ruling on a motion in limine is reviewed on appeal for an abuse of discretion." Syl. Pt. 1, *McKenzie v. Carroll Intern. Corp.*, 216 W.Va. 686, 610 S.E.2d 341 (2004).

3.      "The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review

evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995).

4. "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972).

5. "Applicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the West Virginia Constitution, which are: First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation." Syl. Pt. 2, *North v. Bd. of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977).

6. "Under article [VIII], section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." Syl. Pt. 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988).

7.  In a child abuse and neglect civil proceeding held pursuant to West Virginia Code § 49-6-2 (2009), a party does not have a procedural due process right to confront and cross-examine a child. Under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, there is a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. The circuit court shall exclude this testimony if it finds the potential psychological harm to the child outweighs the necessity of the child's testimony.

8.  "Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules." Syl. Pt. 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990).

9.  "The language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart in Rule 803(24) requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to

be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence." Syl. Pt. 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

10. """"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code, 49-6-5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code, 49-6-5b [1977] that conditions of neglect or abuse can be substantially corrected.' Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syllabus point 4, *In re Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989).' Syl. Pt. 1, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993)." Syl. Pt. 6, *In re Isaiah A.*, 228 W.Va. 176, 718 S.E.2d 775 (2010).

**Workman, Justice:**

In this proceeding we address two appeals from the final order of the Circuit Court of Fayette County, West Virginia, entered on May 3, 2013. This is a child abuse and neglect matter brought against the petitioner father J.S.[1] and the petitioner mother C.S. (hereinafter collectively "the petitioners" or individually "the father" and "the mother"). This Court considers the primary issue of whether the petitioners' procedural due process rights were violated when out-of-court statements of two children were admitted to prove allegations of sexual abuse when the petitioners were not given the opportunity to confront and cross-examine the children. The West Virginia Department of Health and Human Resources ("the DHHR") and the guardian ad litem on behalf of the children contend the circuit court properly excluded the testimony of the children pursuant to Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect because the petitioners offered no evidence to overcome the presumption that the potential psychological harm to the children outweighed the necessity of their testimony.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court adequately

---

[1] We follow our normal practice in juvenile and domestic relations cases which involve sensitive facts and use the parties' initials. *See*, *e.g.*, *W.Va. Dept. of Human Servs. v. La Rea Ann C.L.*, 175 W.Va. 330, 332 S.E.2d 632 (1985); *see also* W.Va. R. App. P. 40(e).

1

safeguarded the petitioners' procedural due process rights. We find no error and affirm the termination of their parental rights.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of a child abuse and neglect petition filed following allegations of sexual abuse and failure to protect. N.L. (age 11), the niece of the mother, reported that the father had sexually assaulted her. A DHHR child protective services case worker spoke with N.L. and the child disclosed in graphic detail repeated sexual assaults by the father. N.L. stated that she told the mother about the abuse but the mother did not believe her.

The father was living with the mother, their infant son J.S. Jr., N.L., and his son from a previous relationship, D.S. (age 14). N.L. reported that the father would lock D.S. in his room, put J.S. Jr. in his crib and sexually assault her when the mother was at work. The DHHR filed an amended petition that added allegations against the father concerning D.S. (discussed below). The DHHR alleged in the petition that the mother ignored repeated warnings from the DHHR that the presence of the father in the home presented a significant risk to the safety of the children.

The mother had guardianship of N.L. from the fall of 2009 until early June of 2011.[2] In the guardianship case, the court ordered that the father was not to have contact with N.L. or reside in the home with N.L. and the mother due to substantiated prior sexual misconduct by the father.[3] This order was ignored by the mother and she married the father in November of 2010. N.L. lived in the home with the mother and the father until June of 2011.[4]

As a result of filing the petition, D.S. and J.S. Jr. were removed from the home. The couple's infant daughter, D.S.,[5] was born after the filing of the petition, and the DHHR sought her custody soon after birth due to these pending allegations.

---

[2] N.L. is the daughter of the mother's sister. N.L.'s grandmother had custody of N.L. since the child was born but she suffered medical problems and was hospitalized. Thereafter, the mother gained guardianship of N.L. in 2009.

[3] The father was indicted and found not guilty of second degree sexual assault of his former wife. However, in November of 2009, an investigator with child protective services noted in a status report that the DHHR had substantiated the sexual assault. Further, the investigator noted the father, by his own admission, had previously been accused of inappropriately touching his daughter, although he denied this accusation.

[4] In May of 2011, the DHHR informed the judge presiding in the guardianship case that the couple had married and had a child. A hearing was conducted in this matter in June of 2011, and the mother testified that she allowed the father to live in her home with their child and N.L. knowing that she was in violation of the provisions of the guardianship order. Thereafter, the court entered an order terminating the mother's guardianship and appointing the paternal great uncle and great aunt of N.L. as guardians.

[5] The father has seven children -- two with the mother.

Prior to the adjudicatory hearing, the DHHR filed a motion in limine to exclude the testimony of the children and instead procure the evidence through viewing previously recorded forensic interviews of N.L. and D.S. The DHHR informed the circuit court that the children feared having to testify against the father. The petitioners filed a response objecting to this evidence and asserting they had the right to cross-examine the children. At the beginning of the adjudicatory hearing, the circuit court granted the DHHR's motion in limine and stated:

> Rule 8 of the [West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings][6] . . . talks about a rebuttable presumption that it's psychologically harmful to children of young and tender years to undergo testimony in front of total strangers, adult total strangers, and then be cross-examined. And there is nothing in the record to, no

---

[6] Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings states:

> *Restrictions on the testimony of children.* – Notwithstanding any limitation on the ability to testify imposed by this rule, all children remain competent to testify in any proceeding before the court as determined by the Rules of Evidence and the Rules of Civil Procedure. However, there shall be a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony and the court shall exclude this testimony if the potential psychological harm to the child outweighs the necessity of the child's testimony. Further, the court may exclude the child's testimony if (A) the equivalent evidence can be procured through other reasonable efforts; (B) the child's testimony is not more probative on the issue than the other forms of evidence presented; and (C) the general purposes of these rules and the interest of justice will best be served by the exclusion of the child's testimony.

4

professional evidence in the record, or otherwise, which rebuts that presumption. And I think it goes without saying in this case, considering the ages of these two children and the nature of what they would have to talk about, even if they just talked to me in camera, is very, very horrific and will clearly only compound whatever simply being in a foster home has done to them, can only compound the psychological harm, most of which we would not – I'll probably be dead and gone by the time it manifests itself, maybe. It's not something you can see next week or this afternoon or tomorrow morning, it comes out over a period of gestation as it stews and bubbles in peoples' heads for years and years and years.

So I grant your motion in limine to those two children for the reasons that the rebuttable presumption has not been rebutted, no evidence offered, as I said, to do that, other than to say that, basically, they need the testimony and it would be harmful to their clients' interest if [the testimony was not taken]. I disagree. (footnote added).

At the adjudicatory hearing held July 9, 2012, the DHHR submitted the videotaped interviews of N.L. and D.S., and the handwritten notes taken from those interviews. The interviews were videotaped by the Fayette County Sheriff's Department at the Just for Kids Center in Oak Hill, West Virginia. The interviews were conducted by an employee with the child services agency. N.L. detailed graphic sexual abuse by the father. There are various timeframes in the interview where N.L. denies telling anyone about the abuse, but she later indicates she told the mother and the mother did not believe her. In his interview, D.S. disclosed that on one occasion, the father accused him of masturbating, scolded him, and touched his penis. D.S. stated that he was repeatedly locked in his room, with the lock on the outside of the door so he could not get out.

5

The DHHR submitted a letter dated January 18, 2012, addressed to "mommy," wherein N.L. described details of sexual assaults suffered at the hands of the father. N.L. wrote that the father threatened violence against the mother and N.L.'s grandparents if she were to tell anyone about the sexual assaults. This letter was admitted into evidence without objection. The therapy treatment records of N.L. were also admitted without objection. [7]

The father testified and denied any inappropriate contact with the children. The mother testified and denied that N.L. made any disclosures that the father had sexually abused her. The mother testified that the first time she learned about the abuse allegations was when her sister called her after N.L. had left a therapy session in February of 2012. The mother acknowledged that when she was granted guardianship of N.L., the court prohibited the father from having contact with N.L. In spite of that prohibition, she allowed him to live in the home with N.L.

In the adjudicatory order entered December 17, 2012, the circuit court found that the father sexually abused N.L. on numerous occasions, in a variety of ways. The circuit court also found that the mother permitted the father to remain in her home despite having knowledge of past sexual abuse allegations against him and in violation of the guardianship order entered in 2009. The circuit court held that the father sexually

---

[7] N.L.'s letter and her therapy treatment records were not included in the appendix record submitted to this Court by the parties.

abused D.S. by inappropriately touching the child on one occasion. The circuit court found that the children were abused and neglected as defined by West Virginia Code §§ 49-1-3(a) (2009)[8] and 49-1-3(a)(4) (2009).[9]

At the dispositional hearing held on April 12, 2013, the DHHR called Barbara A. Nelson, M.A., psychologist, to testify regarding an evaluation of the mother. She stated the mother's failure to recognize the danger that the father presents to her children stems from poor judgment and a tendency to put her own desires above the safety of others. The DHHR also called child protective services worker Amanda Hayhurst to testify regarding the DHHR's decision to seek termination of the petitioners' rights. Ms. Hayhurst testified that during the entire time this case was pending, members of the multidisciplinary team told the mother repeatedly that she needed to have the father move out of her home. The mother refused and continued to reside with the father even though serious allegations of sexual abuse were substantiated. The petitioners did not testify at the dispositional hearing.

---

[8] West Virginia Code 49-1-3(a) defines an "abused child" as a child whose health or welfare is harmed or threatened by: "(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home; or (2) Sexual abuse or sexual exploitation[.]"

[9] West Virginia Code 49-1-3(a) defines an "abused child" as a child whose health or welfare is harmed or threatened by "(4) Domestic violence[.]" In these appeals, the parties do not address the evidence regarding domestic violence between the father and the mother.

The circuit court terminated the parental rights of the petitioners by order entered May 3, 2013. The circuit court found "[t]here is no reasonable likelihood that the conditions of neglect or abuse" can be substantially corrected and the welfare of the child respondents in this case necessitates the termination of their parental rights. This appeal followed. [10]

## II.  STANDARD OF REVIEW

We are asked to review a circuit court's order entered upon a petition for termination of parental rights. This Court has explained that "[f]or appeals resulting from abuse and neglect proceedings, such as the case *sub judice*, we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily*, 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). In addition, we have held:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless

---

[10] The father faced criminal charges from the sexual abuse allegations of N.L. and D.S. He was indicted for nine counts of first degree sexual assault and nine counts of sexual abuse by a custodian (N.L.) and one count of sexual abuse in the first degree and one count of sexual abuse by a parent (D.S.). The criminal trial was held just weeks after the circuit court terminated his parental rights. In May of 2013, a jury returned guilty verdicts on all eighteen counts. The court sentenced the father to prison, the minimum term of which exceeds his normal lifespan.

clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In re Tiffany Marie S*., 196 W. Va. 223, 470 S.E.2d 177 (1996).

In this appeal, the petitioners challenge the circuit court's decision to grant the DHHR's motion in limine to exclude the children's testimony. "A trial court's ruling on a motion in limine is reviewed on appeal for an abuse of discretion." Syl. Pt. 1, *McKenzie v. Carroll Intern. Corp.*, 216 W.Va. 686, 610 S.E.2d 341 (2004). The petitioners also contest the circuit court's evidentiary rulings. Our pertinent standard of appellate review is set forth in Syllabus Point 1, in part, of *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995):

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

With these principles in mind, we turn to the parties' arguments.

## III. DISCUSSION

9

## A. Procedural Due Process

The petitioners challenge the circuit court's decision to exclude the children's testimony under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. The petitioners concede they did not present evidence to overcome the presumption that the potential psychological harm to the children outweighed the necessity of the children's testimony. Nevertheless, the petitioners contend they have a constitutional due process right to confront and cross-examine the children.[11] Stated abstractly, this is by no means a frivolous claim. A parent has a fundamental liberty interest in the care and custody of his or her child. *See Santosky v.*

---

[11] The petitioners appropriately refrain from arguing they were denied the Sixth Amendment right of confrontation, which applies only to criminal cases.

> "The Confrontation Clause contained in the Sixth Amendment to the United States Constitution provides: 'In all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him.' This clause was made applicable to the states through the Fourteenth Amendment to the United States Constitution." Syl. Pt. 1, *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990), *overruled on other grounds by*, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

Syl. Pt. 2, *State v. Kaufman*, 227 W.Va. 537, 711 S.E.2d 607 (2011). Because abuse and neglect proceedings are civil proceedings, the Confrontation Clause of the Sixth Amendment of the United States Constitution is not applicable here. *See e.g., In re J.D.C.*, 159 P.3d 974, 981 (Kan. 2007) (discussing Confrontation Clause did not apply to "child in need of care" proceeding); and *In re S.A.*, 708 N.W.2d 673, 679 (S.D. 2005) (recognizing Sixth Amendment right of confrontation did not apply to civil abuse and neglect proceedings).

*Kramer*, 455 U.S. 745, 753 (1982) (recognizing this fundamental liberty interest requires the State to "provide the parents with fundamentally fair procedures" in termination proceedings); and Syl. Pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973) (holding parental custody of minor child is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions). In child abuse and neglect proceedings, we have long espoused the position that the rights of the parents are an essential consideration. The government's interest in protecting the welfare of children is also significant. However, the best interest and welfare of the child outweigh all other considerations. *See* Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."). In other words, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972).

We begin with the relevant parameters of the petitioners' due process claim. Any right that a civil litigant can claim to confrontation and cross-examination is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments of the

11

United States Constitution[12] and article III, section 10 of the West Virginia Constitution. We are mindful that proceedings to terminate parental rights implicate fundamental liberty interests. Without question, a parent is entitled to due process of law before he or she can be deprived of his or her right to the custody, care and control of his or her child. The right is not absolute in that it can be limited or terminated by the State if a parent is proven unfit through proceedings affording the parent due process of law.

Statutorily, termination is proper only when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and "when necessary for the welfare of the child[.]" W. Va. Code § 49-6-5(a)(6) (2009). "Given the significance of parental rights, a heightened level of evidentiary proof is necessary to warrant termination. 'The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.'" *In re Jessica M.*, 231 W.Va. 254, __, 744 S.E.2d 652, 658 (2013) (*quoting* Syl. Pt. 6, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129).

The fundamental requirement of procedural due process in a civil proceeding is "the opportunity to be heard at a meaningful time and in a meaningful

---

[12] *See Willner v. Comm. on Character and Fitness*, 373 U.S. 96, 103 (1963) (stating procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood).

12

manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). What would constitute due process in this case must be determined by weighing the competing interests of the children, the parents, and the State. It is well established that

> [t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation and firmly established that what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

*Stanley v. Illinois*, 405 U.S. 645, 650-51 (1972); *see e.g., U.S. v. Alisal Water Corp.*, 431 F.3d 643, 658 (9th Cir. 2005) ("[I]n the context of a civil suit, cross-examination is not, in every instance, a sine qua non of due process. It all depends on the situation.") (quotations omitted).

This Court has recognized that due process in the civil context "is a flexible concept which requires courts to balance competing interests in determining the protections to be accorded one facing a deprivation of rights." *Clarke v. W.Va. Bd. of Regents,* 166 W.Va. 702, 710, 279 S.E.2d 169, 175 (1981); *see generally, Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 483 (1982) (commenting that "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause"). In syllabus point two of *North v. Board of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977), this Court found

> [a]pplicable standards for procedural due process, outside the criminal area, may depend upon the particular

13

circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the West Virginia Constitution, which are: First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation.

In *North*, a medical student challenged the administrative process that ultimately led to his expulsion from a State-supported university for falsification of his application for admission. Therefore, his due process claim involved a property interest, not a liberty interest. Because of the substantial property interest involved in *North*, we held due process procedures included "a formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront his accusers, and to present evidence on his own behalf; an unbiased hearing tribunal; and an adequate record of the proceedings." Syl. Pt. 3, in part, *North*, 160 W.Va. 248, 233 S.E.2d 411.

In the instant case, we find the petitioners were afforded procedural due process. They were provided with fundamentally fair procedures including proper notice of the petition, amended petitions and proceedings pursuant to West Virginia Code § 49-6-1(b) (2009). The circuit court appointed the petitioners counsel pursuant to West Virginia Code § 49-6-2(a) (2009). They had a full and fair opportunity to review and present evidence at the adjudicatory and dispositional hearings before an unbiased

14

tribunal pursuant to West Virginia Code § 49-6-2 (2009). The petitioners viewed the videotaped interviews of the children prior to the adjudicatory hearing and were given the opportunity to rebut this evidence. Notably, they did not raise any alleged impropriety in the questioning techniques employed by the interviewer or attack the reliability of this evidence. Finally, the petitioners were provided a record of the proceedings below along with the right of appellate review.

The petitioners complain that they were denied the opportunity to confront and cross-examine the children. While their argument lacked development below, essentially the petitioners complain that the procedures were inadequate to minimize the risk of an erroneous finding of abuse. This assertion lacks merit. There may be situations where a circuit court could find the evidence was sufficient to overcome the rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. The West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provide guidance *when* the presumption is overcome and the circuit court determines it is necessary to take testimony from a child to enhance the integrity of the fact-finding process. [13] However, the petitioners have failed to articulate with any degree

---

[13] Rule 8(b) provides:

> *Procedure for taking testimony from children.* – The court may conduct in camera interviews of a minor child, outside the presence of the parent(s). The parties' attorneys shall be allowed to attend such interviews, except when the court determines that the presence of attorneys will be

(continued . . .)

15

of specificity how confrontation and cross-examination would have enhanced the fact-finding process in this case.

We next turn to the petitioners' argument that Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings violates their statutory right of confrontation and cross-examination under West Virginia Code § 49-6-2(c) (2009).[14] The petitioners appear to equate this statutory provision with the rule set forth in *Crawford v. Washington*, 541 U.S. 36 (2004):

especially intimidating to the child witness. When attorneys are not allowed to be present for in camera interviews of a child, the court shall, unless otherwise agreed by the parties, have the interview electronically or stenographically recorded and make the recording available to the attorneys before the evidentiary hearing resumes. Under exceptional circumstances, the court may elect not to make the recording available to the attorneys but must place the basis for a finding of exceptional circumstances on the record. Under these exceptional circumstances, the recording only will be available for review by the Supreme Court of Appeals. When attorneys are present for an in camera interview of a child, the court may, before the interview, require the attorneys to submit questions for the court to ask the child witness rather than allow the attorneys to question the child directly, and the court may require the attorney to sit in an unobtrusive manner during the in camera interview. Whether or not the parties' attorneys are permitted to attend the in camera interview, they may submit interview questions and/or topics for consideration by the court.

[14] West Virginia Code 49-6-2(c), provides, in part:

In any proceeding pursuant to the provisions of this article, the party or parties having custodial or other parental

(continued . . .)

16

> Pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness. Syl. Pt. 6, *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006).

Syl. Pt. 6, *State v. Kaufman*, 227 W.Va. 537, 711 S.E.2d 607 (2011). We reject this claim because there is no authority for it in a civil proceeding. As discussed above, a child abuse and neglect hearing is a civil rather than criminal action, with the right to confront witnesses subject to "due limitations." *In re Murphy*, 414 S.E.2d 396, 400 (N.C.App. 1992). [15]

We find that to the extent Rule 8(a) may conflict with West Virginia Code § 49-6-2(c), there is no doubt the rule would control. *See* Rule 1 of the Rules of Procedure for Child Abuse and Neglect Proceedings ("These rules set forth procedures for circuit courts in child and abuse neglect proceedings instituted pursuant to W.Va.

---

> rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses.

[15] In *In re Lauren R.*, 715 A.2d 822 (Conn. App. Ct. 1998), the court addressed a similar statute in a child abuse and neglect proceeding. The mother alleged the trial court violated her statutory right of confrontation and cross-examination when it refused to allow her daughter to testify. The appellate court upheld the trial court's decision not to question the child because requiring her to testify could "victimize" her and the child's testimony was not necessary based on the evidence. *Id.* 715 A.2d at 831.

Code § 49-6-1, et seq. If these rules conflict with other rules or statutes, these rules shall apply."). Moreover, the Legislature lacks the constitutional authority to direct the courts in procedural matters. West Virginia Constitution, article VIII, § 3 confers upon this Court the power to promulgate rules for all cases and proceedings, civil and criminal. "Under article [VIII], section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." Syl. Pt. 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988).

Based on the foregoing, we hold that in a child abuse and neglect civil proceeding held pursuant to West Virginia Code § 49-6-2 (2009), a party does not have a procedural due process right to confront and cross-examine a child. Under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, there is a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. The circuit court shall exclude this testimony if it finds the potential psychological harm to the child outweighs the necessity of the child's testimony.

## B. Admission of Out-of-Court Statements

We now address the admissibility of the children's videotaped interviews under the West Virginia Rules of Evidence, which remain the paramount authority in

18

determining the admissibility of evidence in circuit courts.[16] *See* Syl. Pt. 7, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994); 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 101.02 at 1-6 (5th ed. 2012). We note from the onset the petitioners did not make a sufficient objection to the use of this evidence. In *In re Tiffany Marie S.*, 196 W.Va. 223, 234, 470 S.E.2d 177, 188 (1996), we stated:

> The West Virginia Rules of Evidence declare that parties must object to the wrongful offer of evidence at a particular time and with reasonable specificity. The failure to object at the time and in the manner designated by Rule 103(a) of the West Virginia Rules of Evidence is treated as a procedural default, with the result that the evidence, even if erroneous, becomes the facts of the case. West Virginia practice imposes the same duty of diligence in regard to nonjury cases. Silence in the circuit court typically constitutes a waiver of objection. *See* W.Va. R. Evid. 103(a)(1).

The petitioners' only objection on hearsay grounds to the introduction of the children's out-of-court statements came in their response to the DHHR's motion in limine filed prior to the adjudicatory hearing. At oral argument in this matter, the petitioners contended that, by its very nature, a motion in limine does not require an objection to preserve the alleged error for appeal. This argument would be correct had they objected to the circuit court's ruling. "An objection to an adverse ruling on a motion in limine to bar evidence at trial will preserve the point, even though no objection was made at the time the evidence was offered, unless there has been a significant change in

_____

[16] West Virginia Code § 49-6-2(c) provides, in part, "[t]he rules of evidence shall apply" in child abuse and neglect proceedings.

19

the basis for admitting the evidence." Syl. Pt. 1, *Wilmer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989). However, the petitioners did not object to the circuit court's ruling on the motion in limine at the adjudicatory hearing.

In addition, when the children's videotaped interviews were introduced and admitted into the record, the petitioners failed to object.[17] Our general rule is "[w]here objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered upon appeal." Syl. Pt. 7, *Wheeling Dollar Savings & Trust Co. v. Leedy*, 158 W.Va. 926, 216 S.E.2d 560 (1975). (Citation omitted). Clearly, the response to the motion in limine did not relate to a jurisdictional matter. It was made for the purpose of excluding out-of-court statements. Therefore, "[a]t most, it went to the admissibility of the evidence. As such, the matter was not jurisdictional and, in the absence of an objection, was not preserved for appeal." *Smith v. Holloway Constr. Co.*, 169 W.Va. 722-23, 289 S.E.2d 230-31 (1982); *see also Coleman v. Sopher*, 201 W.Va. 588, 601, 499 S.E.2d 592, 605 (1997) (discussing failure to preserve alleged errors when party presented motion in limine for exclusion of evidence but record failed to establish that specific challenges raised were presented to or addressed by court below on the record).

---

[17] The circuit court's adjudicatory order provides, in error, that the petitioners objected to the admission of the videotaped interviews.

20

The petitioners' failure to object to the admission of the children's statements at the adjudicatory hearing is significant for purposes of our appellate review. Because this evidence was not challenged, the circuit court did not specify on the record what hearsay exception(s) applied. However, we find the issue warrants brief discussion and we may review an unpreserved error if the error is "plain." *See* W.Va. R. Evid. 103(d). Under a plain error analysis "the alleged error must have seriously affected the fairness or integrity of the trial." *In re Tiffany Marie S.*, 196 W.Va. at 234, 470 S.E.2d at 188.

In reviewing the circuit court's admission of this evidence, we begin with the well-established rule that

> [g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990). The purpose of excluding hearsay testimony at trial is to prevent unreliable information from reaching the jury.

The first step of our analysis is to determine whether the videotaped interviews of the children were hearsay under West Virginia Rule of Evidence 801(c).

21

We answer this question in the affirmative as the out-of-court statements were offered to prove the truth of the matter asserted. *See id.*

We now proceed to determine if the out-of-court statements fell within any of the hearsay exceptions. "[W]hen a child is the declarant, virtually every state has a child hearsay exception, or uses a catch all to permit hearsay that would otherwise be barred." Myrna Raeder, *Domestic Violence, Child Abuse, and Trustworthiness Exceptions After Crawford*, 20 Crim. Just. 24, 33 (Summer 2005). "A few states have also adopted exceptions that require the videotaping of the child interviews typically by law enforcement, psychologists, social workers, or others employed by the local child services agency. This approach is designed to show . . . that the child has not been misled by suggestive questioning techniques[.]" *Id.*

Under circumstances factually similar to the instant case, other jurisdictions have found videotaped interviews of child sexual abuse victims admissible under the "catch all" or residual exception to the hearsay rule. In *In re A.S.W.*, 834 P.2d 801 (Alaska 1992) the court addressed the question of whether a videotaped interview of a child identifying her father as an abuser was properly admissible in parental termination proceedings. The videotaped interview lasted approximately one hour and the victim described in child-like terms explicit sexual abuse. Prior to the adjudicatory hearing, the guardian ad litem moved for a protective order precluding the use of the child as a witness. In granting the motion, the court found the child was unavailable because the

22

trauma of testifying could aggravate her medical problems. Both parties briefed this issue before the adjudicatory hearing. The court admitted the videotaped statement under the residual exceptions to the hearsay rules. On appeal, the father claimed the court abused its discretion in admitting the videotaped interview because it lacked the circumstantial guarantees of trustworthiness that would justify its admission. The Supreme Court of Alaska disagreed and held "[t]he out-of-court statements of a child in proceedings where abuse is alleged are often quite necessary to the administration of justice. Therefore, if the child is unavailable to testify, the courts should admit the statements if the statements are sufficiently reliable." *Id.* at 804.

In *In re Pamela A.G.*, 134 P.3d 746 (N.M. 2006), the state filed a notice of intent to offer a child's videotaped interview in an abuse and neglect proceeding in lieu of her testimony but did not indicate which hearsay exception it relied upon. The court analyzed the statements and found they were unambiguous in both the detailed description of the abuse and the identity of the abuser. The court admitted the statements under the catch all exception to the hearsay rule. On appeal, the Supreme Court of New Mexico upheld the termination of parental rights and found the child's out-of-court statements had sufficient guarantees of trustworthiness to be admissible under the hearsay catch all exception. *Id.* at 752.

In the instant case, we find no error in the circuit court's decision to admit the videotaped interviews of the children because the record reflects they fall under the

23

residual exceptions to the hearsay rules, embodied in West Virginia Rules of Evidence

803(24) and 804(b)(5). [18] This Court has held:

> The language of Rule 804(b)(5) of the West Virginia
> Rules of Evidence and its counterpart in Rule 803(24)
> requires that five general factors must be met in order for
> hearsay evidence to be admissible under the rules. First and
> most important is the trustworthiness of the statement, which
> must be equivalent to the trustworthiness underlying the
> specific exceptions to the hearsay rule. Second, the statement
> must be offered to prove a material fact. Third, the statement
> must be shown to be more probative on the issue for which it
> is offered than any other evidence the proponent can
> reasonably procure. Fourth, admission of the statement must
> comport with the general purpose of the rules of evidence and
> the interest of justice. Fifth, adequate notice of the statement
> must be afforded the other party to provide that party a fair
> opportunity to meet the evidence.

---

[18] The residual exceptions to the hearsay rules permit the admission of hearsay statements that do not fall within one of the traditional exceptions. Rule 803(24) (availability of declarant immaterial) provides, in part:

> A statement not specifically covered by any of the foregoing
> exceptions but having equivalent circumstantial guarantees of
> trustworthiness, if the court determines that (A) the statement
> is offered as evidence of a material fact; (B) the statement is
> more probative on the point for which it is offered than any
> other evidence which the proponent can procure through
> reasonable efforts; and (C) the general purposes of these rules
> and the interests of justice will best be served by admission of
> the statement into evidence. However, a statement may not be
> admitted under this exception unless the proponent of it
> makes known to the adverse party sufficiently in advance of
> the trial or hearing to provide the adverse party with a fair
> opportunity to prepare to meet it, his intention to offer the
> statement and the particulars of it, including the name and
> address of the declarant.

Rule 804(b)(5) (declarant unavailable) contains the identical wording.

Syl. Pt. 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

It is apparent the DHHR proved requisite compliance with the above factors. As we stated in *Smith*, our major concern with any evidence admitted under this exception is its reliability. *Id.* First, the petitioners do not attack the trustworthiness of the children's hearsay statements or the interview techniques. Second, this evidence is clearly probative on the material issue of whether the children were sexually abused. Third, the circuit court assessed these videotaped interviews and was in the best position to determine if they were more probative on the point for which they were offered than other evidence, and whether they had sufficient guarantees of trustworthiness to be reliable. Fourth, the interest of justice would be served by admission of these statements considering the restrictions on taking a child's testimony under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect. Finally, the DHHR provided notice prior to the adjudicatory hearing that it intended to offer this evidence and the petitioners were provided with a fair opportunity to prepare to meet it. *See Smith*, 178 W.Va. at 113, 358 S.E.2d at 197.

As discussed above, because the evidence was not challenged at the adjudicatory hearing, the circuit court did not articulate its reason(s) for admitting these statements. Nevertheless, this Court allocates significant discretion to the circuit court in making evidentiary rulings. "Unlike a jury, a trial judge in a bench trial is presumed to

25

know the law and to follow it" and this presumption may only be rebutted when the record shows otherwise. *Misty D.G. v. Rodney L.F.*, 144 W.Va. 144, 151, 650 S.E.2d 243, 250 (2007) (quoting *People v. Thorne,* 817 N.E.2d 1163, 1177 (Ill.App. 2004)).[19]

## C. Termination of Father's Parental Rights

We now turn to the merits of the circuit court's adjudication and disposition of the father. In view of the elaborate statement of the facts in the circuit court's adjudicatory order, we can greatly abbreviate our own. The circuit court reviewed the evidence and found the father "forced [N.L.] to engage in sexual intercourse with him" on multiple occasions. The circuit court also found the father sexually abused D.S. on one occasion. Determining whether a parent has neglected or abused his children is a predominantly fact-bound endeavor. It follows that, absent a mistake of law, an appellate tribunal should disturb a circuit court's determination only if it is clearly erroneous. No clear error appears, and we find the circuit court was not clearly wrong in holding the DHHR satisfied its burden of proof.

The father testified at the adjudicatory hearing and denied all allegations against him. Clearly, the circuit court was not persuaded by his testimony. This Court

---

[19] "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfok*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

confers great deference to credibility determinations made following a bench trial because the circuit court has viewed the demeanor of the witnesses. *See Brown v. Gobble,* 196 W.Va. 559, 565, 474 S.E.2d 489, 495 (1996); *see generally, State v. Guthrie,* 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses . . . as that is the exclusive function and task of the trier of fact.").

Based on the foregoing, we find that termination of the father's parental rights in the present proceeding is warranted. We believe the DHHR proved that the father sexually abused N.L. and D.S. Furthermore, the children remain at substantial risk of significant harm from the father as there was no showing of a reasonable likelihood that the conditions of abuse could be substantially corrected. As we have previously explained:

> """Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code, 49-6-5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code, 49-6-5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).' Syllabus point 4, *In re Jonathan P.*, 1982 W.Va. 302, 387 S.E.2d 537 (1989)." Syl. Pt. 1, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. Pt. 6, *In re Isaiah A.*, 228 W.Va. 176, 718 S.E.2d 775 (2010).


## D. Termination of Mother's Parental Rights

27

In her appeal, the mother asserts the circuit court erred by terminating her parental rights without granting a post-adjudicatory improvement period when the DHHR failed to make reasonable efforts to reunify the family. The mother contends the only service offered to her for almost a year while the case was pending was supervised visitation. Further, the mother argues that she is entitled to a remand for another adjudicatory hearing because N.L. testified under oath in the father's subsequent criminal trial that she did not tell the mother about the sexual abuse. We are not persuaded by these arguments.

The circuit court did not err in holding the DHHR satisfied its burden of proof with regard to the mother. The evidence throughout this case concerned the mother's repeated pattern of allowing the father to have contact with the children despite clear warnings to the contrary.[20] The mother knowingly violated the court's order in the 2009 guardianship matter that specified the father was not to live in the home with or have any contact with N.L. because of substantiated sexual abuse claims against him. As the DHHR explained, the mother was not offered services or an improvement period because she was living with the father, even at the time of the dispositional hearing. At

---

[20] The mother also criticizes the circuit court's adjudicatory findings and states the ruling essentially implies that she "should have known" of the risk the father posed. We reject this argument because the circuit court found her claims of ignorance not credible. In its adjudicatory order, the circuit court stated the mother failed to investigate N.L.'s accusations and "casually dismissed the child's serious accusations by simply telling the child that she did not believe" her.

28

oral argument in this matter, the guardian ad litem for the children expressed his frustration that throughout the entire time this case was pending, the mother did nothing but ignore his requests and the requests of her attorney to have the father move out of the home.

Considering the foregoing, we find the circuit court did not err in denying the mother's request for an improvement period because any attempt would be futile. "'[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened. . . .' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Moreover, the DHHR was not required to make reasonable efforts in this case to preserve the family because the children were subjected to aggravated circumstances of sexual abuse. *See* W.Va. Code § 49-6-3(d)(1).

Accordingly, we find the circuit court had before it sufficient evidence with which to terminate the mother's parental rights and deny her request for an improvement period. We deny her request to remand the case for a new adjudicatory hearing because we find N.L.'s testimony at the father's subsequent criminal trial would not change the outcome of these proceedings.

## IV. CONCLUSION

29

Based upon the foregoing, the final order of the Circuit Court of Fayette County entered May 3, 2013, is affirmed.

Affirmed.