STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re*: **J.S.-1 and J.S.-2**

**No. 16-0472** (Kanawha County 14-JA-330 & 14-JA-331)

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.S., by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's April 26, 2016, order terminating his parental rights to seven-year-old J.S.-1 and nine-year-old J.S.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Bryan B. Escue, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights based on "unproven hearsay allegations of sexual abuse of a minor infant."[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2014, the DHHR filed an abuse and neglect petition against petitioner in which it alleged that he sexually abused his daughter, J.S.-1 (then five). According to the DHHR, J.S.-1 accused petitioner of pulling down her pants and "humping" her; leaving her with another

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children in this matter share the same initials, the Court will refer to the children as J.S.-1 and J.S.-2 throughout this memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

man who inappropriately touched her; and allowing "a little boy who came to the house" to "hump" her. During a forensic interview at the Child Advocacy Center ("CAC"), J.S.-1 told the interviewer that petitioner "humped" her while she was sleeping; rubbed her "private" with his hand and head; and did these things with his clothes off. The DHHR further alleged that petitioner exposed the children to drug use and domestic violence in his home. According to J.S.-2's account, as relayed in the petition, petitioner choked and "body slammed" his girlfriend; cut "white stuff" with a card or knife before smoking it or selling it in bars; gave the then seven-year-old J.S.-2 marijuana and cigarettes; and called J.S.-2 a "dirty b****". J.S.-2 could also describe how to prepare a marijuana cigar or "blunt." Finally, the DHHR noted petitioner's extensive criminal history, which included charges of battery, domestic battery, violation of a protective order, wanton endangerment, transferring/receiving stolen property, delivery of a controlled substance, kidnapping, and attempted murder.

In March of 2015, the circuit court held an adjudicatory hearing. At that hearing, the children's mother testified that she and petitioner, who did not reside together, had joint custody of the children through a parenting plan adopted by the Family Court of Kanawha County. She explained that the children often stayed with petitioner overnight when there was no school. At the outset of the children's mother's testimony, petitioner objected to the admission of any evidence of the children's out-of-court statements on hearsay grounds, and he argued that no emotional and psychological harm had been established such that those statements were subject to the protections available for child witnesses in child and neglect proceedings. The circuit court overruled the objection. According to the children's mother, J.S.-1 had been in counseling since 2014 and testifying about the underlying abuse would cause J.S.-1 emotional and psychological harm.

As to the allegations in the petition, the children's mother testified that J.S.-1 initially reported problems with her urination after returning from a visit with petitioner. It was at that time that J.S.-1 revealed that petitioner had touched her and had "pulled down her pants and got on top of her and was humping her. These are [J.S.-1's] words." J.S.-1 also told her mother that, while in petitioner's custody, another man touched her and a "little boy had humped her."

At the adjudicatory hearing, the circuit court also heard testimony from Maureen Runyon, a forensic interviewer at the CAC. Ms. Runyon testified that J.S.-1 informed her during a forensic interview that petitioner touched her vagina on multiple occasions and put his head on her "private." Ms. Runyon stated that, in an effort to illustrate petitioner's act of putting his head on her "private," J.S.-1 turned around in her chair, buried her face in the cushion, and moved her head. Ms. Runyon explained that J.S.-1's sexual knowledge was very advanced for a five-year-old and that her descriptions were credible given her detail and the lack of any indication that she was coached to make the allegations against petitioner. Ms. Runyon also interviewed J.S.-2, and she testified as to J.S.-2's account of drug use and domestic violence in petitioner's home, as relayed in the petition.

In his defense, petitioner and his girlfriend testified generally that the allegations petitioner were false. Based on the evidence presented, the circuit court found Ms. Runyon's testimony to be more credible than petitioner's and his girlfriend's testimony. As such, the circuit court adjudicated petitioner as an abusing parent.

In May of 2015, the circuit court held a dispositional hearing. At that time, petitioner was incarcerated on a federal charge of illegally possessing a firearm, but he was present via videoconferencing and was represented by counsel. At that hearing, petitioner testified that the allegations against him were false and that he loved his children. The circuit court heard testimony from the Child Protective Services worker, who recommended termination of petitioner's parental rights. The circuit court also took judicial notice of the evidence admitted at the prior hearings in this matter. At the conclusion of the hearing, the circuit court found that the conditions of abuse or neglect could not be corrected in the near future and that termination was necessary for the children's welfare. For those reasons, the circuit court terminated petitioner's parental rights to the children. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that

> [t]he West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights to the children based on the "unproven hearsay allegations of sexual abuse of a minor infant." Petitioner claims that the circuit court erred in considering J.S.-1's "hearsay" statements, as those statements were presented in the testimony of the child's mother and Ms. Runyon. In the context of child testimony in abuse and neglect proceedings, this Court has held as follows:

> In a child abuse and neglect civil proceeding held pursuant to West Virginia Code § 49-6-2 (2009), a party does not have a procedural due process

right to confront and cross-examine a child. Under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, there is a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. The circuit court shall exclude this testimony if it finds the potential psychological harm to the child outweighs the necessity of the child's testimony.

Syl. Pt. 7, *In re J.S.*, 233 W.Va. 394, 397, 758 S.E.2d 747, 750 (2014). It is undisputed that the children's mother testified that J.S.-1 would suffer emotional and psychological harm if she were to testify about petitioner's abuse and that such harm outweighed the necessity of her testimony. For that reason, the circuit court was within its discretion to exclude J.S.-1's testimony under Rule 8 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. However, as explained in *In re J.S.*, following the exclusion of the children's testimony due to emotional and psychological harm, the admission of the children's out-of-court statements into evidence remains subject to the rule against hearsay.

In *In re J.S.*, this Court considered a hearsay challenge to the admission of videos of the children in an abuse and neglect proceeding being interviewed about suffering sexual abuse at the hands of their parents. In reviewing that evidence, this Court determined that the children's out-of-court video statements constituted hearsay, but explained that the videos fell under hearsay exceptions that permitted their admission. This Court explained that

> [g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules. Syl. Pt. 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990).

*In re J.S.*, 233 W.Va. at 405, 758 S.E.2d at 758. Based on its review in that case, this Court concluded that there was "no error in the circuit court's decision to admit the videotaped interviews of the children because the record reflects they fall under the residual exceptions to the hearsay rules, embodied in West Virginia Rules of Evidence [Rule 807]" *Id*. at 406, 758 S.E.2d at 759.

Similarly, in this case, the children's out-of-court statements constitute hearsay, as they were out-of-court statements by non-declarants admitted for the truth of the matter asserted, but those statements fall under the residual exception to the hearsay rule. *See* W.Va. R. Evid. 801(c) (defining hearsay); *id*. at Rule 807 (providing factors to evaluate residual exception to hearsay rule). To fall under the residual exception to the hearsay rule, the out-of-court statements must satisfy the following five factors:

> First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact.

4

Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence.

Syl. Pt. 5, in part, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

Here, all five factors are satisfied. First, Ms. Runyon testified that J.S.-1's statements appeared trustworthy, and no evidence refuted that testimony. At the adjudicatory hearing, Ms. Runyon stated that there was no indication that J.S.-1 was coached to provide her statements and that her statements appeared credible due to their level of detail and their knowledge of sexual acts. Second, the statements were admitted to prove that petitioner abused his children, a material fact. Third, due to the nature of the sexual abuse allegations against petitioner, J.S.-1's statements against petitioner were clearly more probative on the issue of what occurred than any other evidence the DHHR could have reasonably procured. Fourth, as was the case in *In re J.S.*, the interest of justice was served by the admission of J.S.-1's statements due to the restrictions on taking the child's testimony under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect. Finally, J.S.-1's statements were relayed, not only in several areas of discovery provided by the DHHR, but in the original abuse and neglect petition that initiated the underlying proceedings. Therefore, because we find J.S.-1's statements to have been admissible, we find no merit to petitioner's assignment of error.

For the foregoing reasons, we hereby affirm the circuit court's April 26, 2016, order.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

5