# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.P.-1, M.P., and D.P.-2**

**No. 18-0099** (Greenbrier County 17-JA-56, 57, and 58)

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.P., by counsel Martha J. Fleshman, appeals the Circuit Court of Greenbrier County's January 5, 2018, order terminating his parental, custodial, and guardianship rights to D.P.-1, M.P., and D.P.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Kristopher Faerber, filed a response on behalf of the children, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him a preliminary hearing on the amended petition; requiring him to leave the courtroom during T.W.'s testimony; denying him an improvement period; terminating his parental, custodial, and guardianship rights to D.P.-1, M.P., and D.P.-2; and discontinuing visitation with the children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as D.P.-1 and D.P.-2, respectively, throughout this memorandum decision.

[2]Petitioner sets forth two assignments of error regarding the circuit court's termination of his parental rights. We will address them together.

1

In July of 2017, the DHHR filed a child abuse and neglect petition against petitioner and his wife, J.P., in regard to four children: T.W., D.P.-1, M.P., and D.P.-2.[3] In its petition, the DHHR specifically alleged that T.W. had significant bruising on her arm and the back of her thigh, which she disclosed was caused by the wife. The DHHR alleged that sixteen-year-old T.W. was afraid to live in the home due to the wife's physical abuse, that the wife had a drinking issue and would get violent after drinking, that T.W. reported her bruises were from punishment, and that T.W. related that she had been similarly punished by the wife before. The DHHR also alleged that the wife was emotionally abusive and wanted to terminate her seven-year guardianship of T.W. The DHHR stated that D.P.-1 was nonverbal and could not disclose abuse, and that M.P. did not disclose any abuse. The DHHR also reported that a Child Protective Services ("CPS") worker spoke to T.W.'s half-sister, J.W., who reported that she had seen bruising on T.W. before and provided a recorded video of the wife coaching M.P. in how to respond to law enforcement and CPS workers. According to the DHHR, T.W. had a history of self-harm and running away in order to escape the major mental, physical, and emotional abuse that she suffered under the care of petitioner and his wife. Finally, the DHHR alleged that petitioner and his wife were the subjects of ten CPS referrals over the preceding eight years and that petitioner failed to protect the children from the wife's abuse. Petitioner waived his preliminary hearing.

The DHHR filed an amended petition in August of 2017 in order to add the biological parents of T.W. and D.P.-1. However, the DHHR also included new allegations against petitioner. According to the DHHR, M.P. underwent a third interview in which he disclosed that he witnessed a physical altercation between petitioner, the wife, and T.W. in which petitioner held T.W.'s hair while the wife hit her. M.P. also disclosed that petitioner and his wife hit him across the face with their hands and that the wife hit him and D.P.-2 with a spatula.

Later in August of 2017, the circuit court held an adjudicatory hearing during which petitioner requested a preliminary hearing on the amended petition. However, the circuit court denied petitioner's request and continued the hearing to September of 2017. At the reconvened adjudicatory hearing, petitioner testified that he never abused the children. According to petitioner, T.W. had a history of behavioral issues and had been hospitalized three times, most recently spending a year in a facility in Virginia. Petitioner testified that after being released, T.W.'s bad behavior significantly increased and she ultimately requested that they relinquish their guardianship rights so that she could live with her half-sister. Petitioner and his wife agreed and initiated proceedings to relinquish their guardianship rights. However, the hearing was continued and petitioner explained that T.W. was angry that the issue had not resolved and made the allegations against them the following day. Petitioner also testified that he believed T.W. and M.P. were capable of collaborating on the allegations against petitioner and his wife.

---

[3]Petitioner was the guardian of T.W., who is not at issue in this appeal, and the custodian of D.P.-1, who is his severely disabled biological granddaughter. Petitioner was the adoptive parent of M.P. and D.P.-2.

T.W. testified regarding the abuse perpetrated against her and stated that she had seen petitioner and his wife hit M.B. as well.[4] T.W. stated that she had not collaborated with M.P. to make false allegations against petitioner and his wife and had not spoken to M.P. since the day they were removed from the home. A CPS worker testified regarding her investigation and stated that she did not consider evidence of T.W.'s wanting to leave petitioner's home in reaching her conclusion that the children were abused. Rather, the CPS worker testified that T.W.'s bruises led her to file the petition due to their size and location, which indicated abuse. The CPS worker admitted that she observed no evidence of abuse apart from T.W.'s bruises. T.W.'s biological grandmother testified that she had custody of T.W. until she was nine years old when, due to T.W.'s false allegations of abuse against her, T.W. was removed from the home. Child abuse and neglect proceedings were initiated against the grandmother but ultimately dismissed. The grandmother was unable to take T.W. back into her home for unrelated reasons but testified that she often visited T.W. in petitioner's home over the years and never observed any abuse. After hearing evidence, the circuit court adjudicated petitioner and his wife as abusing parents. Petitioner subsequently filed a motion for a post-adjudicatory improvement period with regard to the remaining children.

The circuit court held an initial dispositional hearing in October of 2017. Petitioner testified that he would participate in an improvement period. However, petitioner continued to deny that the children were abused or that domestic violence occurred in the home, despite admitting that he restrained T.W. by holding her hair during an argument between T.W. and his wife. Further, petitioner stated that he did not know of any aspect of his parenting upon which he could improve. The circuit court held its ruling with regard to the improvement period in abeyance until petitioner could undergo a psychological evaluation.

In January of 2018, the circuit court held a final dispositional hearing. The circuit court ultimately denied petitioner's motion for a post-adjudicatory improvement period, finding that, despite his professed willingness to participate, petitioner failed to acknowledge his abuse of the children and instead blamed T.W. Specifically, petitioner denied abusing the child, but then later admitted that he "held" T.W.'s hair in an effort to calm her down. Notwithstanding this admission, petitioner continued to deny that the child was abused. The circuit court also noted that petitioner underwent a psychological evaluation after the last hearing and continued to blame T.W. for the allegations of abuse. During the evaluation, petitioner alleged that T.W. "had been coached intensively by the CPS worker" and that her bruises were "self-inflicted." The psychologist opined that petitioner's prognosis for attaining minimally adequate parenting skills within the timeframe of the case was poor. As such, the circuit court found that petitioner did not

---

[4]Prior to T.W.'s testimony, the circuit court required petitioner, over his objection, to leave the courtroom so that T.W.'s testimony could be conducted in camera. The circuit court provided petitioner with a listening device, but the device did not work. The circuit court informed petitioner's counsel that she would be able to confer with petitioner regarding the testimony, and take breaks during the testimony when necessary, but ultimately required that petitioner wait outside the courtroom.

demonstrate that he was likely to meaningfully participate in an improvement period given that he failed to accept responsibility for his actions. The circuit court further found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse in the near future and that termination of petitioner's parental, custodial, and guardianship rights was necessary for the children's welfare.[5] It is from the January 5, 2018, dispositional order that petitioner appeals.[6]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying him a preliminary hearing on the amended petition, as it contained additional allegations and he was prohibited from challenging probable cause as to those allegations. We disagree. Rule 19(d) of the Rules of Procedure for Child Abuse and Neglect Proceedings sets forth that "[i]f the petition is amended after the conclusion of a preliminary hearing in which custody has been temporarily transferred to the [DHHR] or a responsible person, it shall be unnecessary to conduct another preliminary hearing." Here, petitioner waived his initial preliminary hearing, at which custody was

---

[5]The record shows that the circuit court terminated petitioner's guardianship rights to T.W. at an earlier hearing.

[6]Petitioner's and J.P.'s parental, custodial, and guardianship rights to the children were terminated below. The permanency plan for M.P. and D.P.-2 is adoption by their current foster family. At the initiation of the proceedings, D.P.-2's biological parents retained their parental rights. However, their parental rights have since been involuntarily terminated or voluntarily relinquished. Due to D.P.-2's disabilities, she is currently placed in a specialty care facility while the DHHR searches for a specialized foster care placement. The permanency plan for D.P.-2 is legal guardianship and the concurrent permanency plan is specialized foster care.

transferred to the DHHR. Therefore, a second preliminary hearing on the amended petition was unnecessary and petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in requiring him to leave the courtroom during T.W.'s testimony. According to petitioner, he was unable to hear the testimony due to technical difficulties with the listening device and was unable to advise his counsel regarding the statements made against him. As such, petitioner contends that he was unable to assist his counsel in formulating a defense. We find petitioner's argument to be meritless. First, petitioner cites to no authority that grants him the right to be present during the child's testimony. Second, we have held that "[i]n a child abuse and neglect civil proceeding held pursuant to West Virginia Code § 49-6-2 (2009) [now West Virginia Code § 49-4-601], a party does not have a procedural due process right to confront and cross-examine a child." Syl. Pt. 7, in part, *In re J.S.*, 233 W.Va. 394, 758 S.E.2d 747 (2014). Moreover, Rule 8(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "the court may conduct in camera interviews of a minor child, outside the presence of the parent(s). The parties' attorneys shall be allowed to attend such interviews, except when the court determines that the presence of attorneys will be especially intimidating to the child witness." Regarding live testimony of a child via closed circuit television, Rule 9(d) provides that

> [t]he judge, the attorneys for the parties, and any other person the court permits for the purpose of providing support for the child in order to promote the ability of the child to testify shall be present in the testimonial room at all times during the testimony of the child witness. The judge may permit liberal consultation between counsel and the parties by adjournment, electronic means, or otherwise.

Here, at her request, T.W. was permitted to testify outside the presence of petitioner during the adjudicatory proceedings. Petitioner's counsel was permitted to remain in the courtroom and petitioner was provided with a listening device, although it ceased working during T.W.'s testimony. However, after learning this information, the circuit court informed petitioner's counsel that she would have ample opportunity to consult with petitioner regarding T.W.'s testimony. She was also given the opportunity to interrupt T.W.'s testimony in order to speak with petitioner. As such, the circuit court complied with the Rules of Procedure for Child Abuse and Neglect Proceedings for taking the testimony of a child and did not err in requiring petitioner to leave the courtroom during T.W.'s testimony.

Petitioner also argues that the circuit court erred in denying him an improvement period when he admitted the allegations against him and testified to his willingness to participate in an improvement period. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Petitioner failed to demonstrate that he was likely to fully participate in an improvement period. While petitioner is correct that he eventually conceded that "holding" T.W.'s hair to restrain her was wrong, he failed to acknowledge any other abuse in the home. Moreover, petitioner testified that he did not know of any aspect of his parenting upon which he could improve. Even after admitting that he held T.W.'s hair in a restraining manner, petitioner alleged during his psychological evaluation that T.W. was coached by a CPS worker and that her wounds were self-inflicted. We have previously held

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640). It is clear that petitioner failed to acknowledge the conditions of abuse and neglect in the home, rendering an improvement period futile. Because petitioner failed to demonstrate that he was likely to participate in an improvement period, the circuit court did not err in denying the same.

Next, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights. First, petitioner argues that the circuit court erred in terminating his rights to D.P.-1 when there was no evidence that she was abused or neglected. Petitioner asserts that each witness's testimony, including T.W.'s, established that D.P.-1 was well cared for and was not abused. Second, petitioner argues that the circuit court erred in terminating his parental rights to M.P. and D.P.-2 based upon insufficient evidence. Specifically, petitioner argues that M.P.'s reports of abuse were ultimately found incredible except for his corroboration of T.W.'s claims that petitioner pulled her hair. According to petitioner, all other evidence contradicted the allegations against him and established that M.P. and D.P.-2 were not abused or neglected. We find petitioner's argument to be unpersuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

The record establishes that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Throughout the proceedings, petitioner continually failed to meaningfully acknowledge that his actions constituted abuse and neglect. In fact, after requesting a post-adjudicatory improvement period, petitioner alleged during his psychological evaluation that T.W.'s bruises were self-inflicted, which led to the psychologist's opinion that petitioner's prognosis for attaining minimally adequate parenting to be poor. As such,

6

petitioner's complete lack of acknowledgment rendered him unable to follow through with any other rehabilitative efforts. Moreover, petitioner's assertions that the only allegations of abuse pertained to T.W. and not the other children are unpersuasive. We have previously held that

> [w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va. Code, 49-1-3(a) (1994) [now W.Va. Code § 49-1-201].

Syl. Pt. 2, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). The circuit court found clear and convincing evidence that petitioner engaged in domestic violence with T.W. in the presence of the other children and, as such, they were also abused. In fact, M.P. reported that he observed the domestic violence perpetrated against T.W. by petitioner and the wife. Accordingly, we find that, based on the evidence, the circuit court correctly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. As mentioned above, circuit courts are to terminate parental, custodial, and guardianship rights upon such findings.

Petitioner finally argues that the circuit court erred in "discontinuing" his post-termination visitation with the children. According to petitioner, D.P.-1 needs his emotional support and denial of visitation serves no other purpose but to punish the other children. However, petitioner fails to cite to any authority demonstrating that he is entitled to post-termination visitation with the children. Further, petitioner provided no evidence that he was denied post-termination visitation as the dispositional order states that the DHHR "may permit supervised visitations between the Adult Respondents and the minor children as may be in the best interests of the children, pending further order of the court." As such, there is no evidence to show that petitioner was denied post-termination visitation, and he is entitled to no relief.

Lastly, because permanency has not been achieved for D.P.-1, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent

placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 5, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: June 11, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.