# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.M., C.C., and E.B.**

**No. 19-1100** (Preston County 18-JA-55, 18-JA-56, and 18-JA-57)

**FILED**

**November 4, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.C., by counsel Cheryl L. Warman, appeals the Circuit Court of Preston County's October 30, 2019, order terminating her parental rights to B.M., C.C., and E.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), James E. Shay, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred when it considered the prejudicial testimony of a police officer, denied petitioner's request for a post-dispositional improvement period, and terminated her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed an abuse and neglect petition against petitioner and M.M., the father of C.C. and B.M., after they failed to follow through with an in-home safety plan by continuing to abuse drugs. In April of 2018, the DHHR received a referral that C.C. was born drug-exposed with cocaine and methamphetamine in his system and that he exhibited signs of withdrawal. Petitioner also tested positive for cocaine at the time of C.C.'s birth and tested positive again in July of 2018. The DHHR alleged that when the worker performed a home visit in July of 2018, she found C.C. dehydrated with a soiled diaper and B.M. suffering from a severe ear infection. Petitioner denied any drug abuse to the worker. Finally, the DHHR alleged that the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

parents engaged in domestic violence in the presence of the children and failed to adequately supervise them. Thereafter, petitioner waived her right to a preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2018, wherein petitioner stipulated to the allegations in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court also granted petitioner a post-adjudicatory improvement period, the terms of which required petitioner to attend supervised visitations, submit to regular drug screenings, participate in adult life skills and parenting classes, complete drug treatment, complete a psychological evaluation, and attend domestic violence counseling sessions. At a status hearing in November of 2018, the circuit court found that petitioner had been compliant with the terms and conditions of her improvement period and continued it for another three months. By February of 2019, the circuit court granted petitioner another extension of her improvement period. However, in May of 2019, when the circuit court terminated M.M.'s parental rights, the multidisciplinary team ("MDT") reported that petitioner had not been cooperative and had lied about M.M.'s whereabouts. The MDT advised that petitioner had missed several drugs screens, two supervised visitations, and had completely stopped attending domestic violence counseling.

During June and July of 2019, the circuit court held five dispositional hearings. At the first hearing, petitioner requested a post-dispositional improvement period. The circuit court denied the motion and proceeded with testimony. Petitioner testified that she had no problem staying sober, had previously attended two out-patient drug treatment programs, did not believe that she needed inpatient drug rehabilitation, and had not seen M.M. since December of 2018. The DHHR presented the testimony of a witness who was allegedly petitioner's Narcotics Anonymous ("NA") sponsor, but the witness testified that petitioner failed to follow through with establishing her as a sponsor, stopped contacting her, and stopped attending NA meetings.

During the second dispositional hearing, petitioner informed the circuit court that she was pregnant, and the DHHR proceeded with testimony from more witnesses. The domestic violence victim's advocate testified that although petitioner recognized M.M. as an abuser, she did not attend all of her domestic violence counseling sessions. Next, the DHHR worker testified that she was very concerned about the children's health as B.M. has a serious health condition that requires special care, and that the children were sick and malnourished when removed by the DHHR. She further testified as to petitioner's substance abuse and stated that she saw petitioner and M.M. walking together in August of 2018—three months after the termination of M.M.'s parental rights.

At the third hearing, the DHHR presented the testimony of a law enforcement officer who investigated a report of a stolen check in January of 2019, which led to petitioner's arrest for conspiring with M.M. to pass a stolen check from petitioner's employer. According to the officer, petitioner subsequently pled no contest to the charge. Further, the officer testified that he went to petitioner's home at the request of the DHHR in April of 2019. At the home, he observed a "small baggie that appeared to have green leafy substance in it" sitting on the railing of the front porch. Suspecting that the baggie contained marijuana, the officer took pictures of the baggie, seized it, and turned it over to the drug task force. However, he testified that he did not follow up with the investigation of the bag's contents. Petitioner objected to the officer's testimony, arguing that it was irrelevant, and that petitioner's no contest plea was inadmissible. The circuit court overruled the objections and admitted the photos of the baggie on the porch, noting that it would give "the

weight that the Court deems appropriate." Next, the DHHR presented evidence that petitioner had not been compliant with drug screenings by missing thirty-two of eighty-two drug screens and testing positive for cocaine in July and December of 2018. Finally, petitioner testified that she had not had contact with M.M. since December of 2018. She also stated that she kept jobs for no longer than a few weeks at a time. Petitioner claimed that she ceased employment at a restaurant after M.M., a coworker, spiked her drink with cocaine, which caused her to fail her subsequent drug screen. Petitioner also testified that she did not need inpatient drug treatment because she did not have a drug problem and missed her drug screens due to her work schedule.

During the fourth hearing in mid-July of 2019, the DHHR presented evidence that petitioner tested positive for methamphetamine on June 28, 2019, and July 17, 2019. Petitioner proffered that her delivery date was February of 2020, making her nearly two months pregnant, at that time and denied all drug usage. The DHHR and the guardian then moved to terminate petitioner's parental rights, and petitioner again moved for a post-dispositional improvement period. The circuit court continued the hearing.

At the final hearing in July of 2019, petitioner testified that she would enter inpatient drug treatment but would do so only after her father completed his heart surgery the following week. The guardian and the DHHR worker testified that they saw M.M. at petitioner's home during a home check in May of 2019—approximately one week after M.M.'s parental rights were terminated. After hearing all of the evidence, the circuit court denied petitioner's motion for a post-dispositional improvement period. The circuit court found that petitioner had "not been truthful to the [c]ourt" and had "continued to consume controlled substances" throughout the proceedings. It was the circuit court's belief that petitioner had "thumbed her nose at the [c]ourt" and failed to address her severe addiction. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination of her parental rights was necessary for the children's welfare. It is from this October 30, 2019, order terminating her parental rights that petitioner now appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2]The father of B.M. and C.C. had his parental rights terminated below. Those children are placed with a foster family, and their permanency plan is adoption therein. The father of E.B. was deemed a nonabusing parent, and the permanency plan for E.B. is to remain in his case.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred when it considered a police officer's testimony regarding his discovery of a "small baggie" containing a "green leafy substance" at petitioner's home because the testimony was both prejudicial and irrelevant. Further, petitioner argues that the officer's testimony of her felony conviction in January of 2019 was inadmissible pursuant to Rule 410 of the West Virginia Rules of Evidence and Rule 11(e)(6) of the West Virginia Rules of Criminal Procedure.[3] We find that petitioner's argument is meritless.

We have held

"[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014).

Here, the officer's testimony about his observations made during a home visit with the DHHR worker was relevant as to the conditions of the home and whether petitioner was compliant with the terms and conditions of her improvement period, which included her abstention from drugs. The officer testified that he believed that the baggie he found on petitioner's porch was a "dime bag" of marijuana. Although the officer never learned whether the small bag conclusively contained marijuana, the circuit court was free to weigh the credibility of the officer's observation. Also, regardless of the circuit court's ability to consider this evidence, the record nonetheless shows that the circuit court did not reference the alleged marijuana in its findings at disposition. Accordingly, we find no merit in this assignment of error.

Additionally, petitioner's argument that the circuit court could not consider her conviction via a plea of nolo contendere is without merit. This Court has found that "neither West Virginia Rule of Evidence 410, nor West Virginia Rule of Criminal Procedure 11(e)(6), prohibits the admission into evidence of a conviction and sentencing resulting from a nolo contendere plea" and Rule 410 of the West Virginia Rules of Evidence "does not prohibit the conviction and sentence

---

[3]West Virginia Rule of Criminal Procedure 11(e)(6) concerns the inadmissibility of pleas, plea discussions, and related statements and provides that "[a] plea of nolo contendere" is not admissible evidence "against the defendant who made the plea or was a participant in the plea discussions . . . in any civil or criminal proceeding." Likewise, West Virginia Rule of Evidence 410(a)(2) provides that nolo contendere pleas are not admissible "in a civil or criminal case . . . against the defendant who made the plea."

that results from the nolo contendere plea from being admitted as evidence . . . to prove that the plaintiff was convicted of the crime that was the subject of the nolo contendere plea." *Humphries v. Detch*, 227 W. Va. 627, 637, 712 S.E.2d 795, 805 (2011). Despite the circuit court's apparent ability to admit evidence that petitioner was convicted of conspiracy in January of 2019 via a nolo contendere plea, on appeal, petitioner concedes that that the "express purpose" of producing the officer's testimony was to prove petitioner's continued forbidden contact with M.M. As the circuit court was free to admit evidence of petitioner's conviction and this evidence was relevant to petitioner's compliance with the terms and conditions of her improvement period, the circuit court did not err in admitting the testimony.

Next, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. Petitioner cites her continued employment; regular participation with supervised visitations, drug screenings, MDT meetings, parenting and adult life skills classes, and domestic violence counseling; completion of a psychological evaluation; and attendance in two out-patient drug treatment programs. According to petitioner, the evidence produced at the dispositional hearings showed that she was likely to fully participate in another improvement period and "that she experienced a substantial change in circumstances since her initial improvement period." We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). West Virginia Code § 49-4-610(3)(D) provides that a circuit court may grant a parent a post-dispositional improvement period when

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-dispositional improvement period. On appeal, petitioner fails to establish what substantial change of circumstances she experienced. Further, the overwhelming evidence presented during the dispositional hearings demonstrated that she was unlikely to fully participate in a post-dispositional improvement period. Foremost, petitioner failed to comply with all of the terms and conditions of her improvement period, the most crucial of which was to address her drug addiction and to cease contact with her abusive partner, M.M. Specifically, petitioner missed thirty-two of eighty-two drug screens and tested positive for controlled substances in July and December of 2018, and June and July of 2019. Although petitioner claims that she attended two separate out-patient drug treatment programs, she failed to complete either. Additionally, petitioner's alleged NA sponsor testified that petitioner failed to follow through with establishing

her as a sponsor, stopped contacting her, and stopped attending the NA meetings. Finally, despite the MDT recommending that she be admitted into inpatient drug treatment, petitioner testified at the final dispositional hearing that she would enroll only after her father's surgery but had taken no steps to secure treatment, despite being pregnant. Clearly, petitioner had no sense of urgency regarding her drug use while pregnant, claimed that she had no problem remaining sober, and failed to appreciate the severity of her addiction. We have previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Furthermore, the evidence showed that petitioner failed to address her toxic relationship with M.M. whose parental rights were terminated in May of 2018. According to the record, petitioner was inconsistent with attending domestic violence counseling and continued contact with M.M. throughout the proceedings. First, the law enforcement officer testified that petitioner was involved in a crime with M.M. in January of 2019—one month after petitioner testified that she last saw M.M. Next, the guardian and the DHHR worker testified that they found M.M. in petitioner's home during a home check in May of 2019—just one month before petitioner's first dispositional hearing in June of 2019. Also, despite acknowledging that her relationship with M.M. placed her and the children in danger, petitioner continued to have contact with M.M. Based on petitioner's failure to comply with the most important terms of her post-adjudicatory improvement period and her failure to genuinely acknowledge the severity of her addiction, we find no error in the circuit court's denial of her motion for a post-dispositional improvement period.

Petitioner's final assignment of error alleges that the circuit court erred in terminating her parental rights to then-fifteen-year-old E.B. when a less-restrictive alternative disposition was available. Petitioner contends that due to E.B.'s age, the circuit court should not have terminated petitioner's parental rights. We find that petitioner is entitled to no relief.

Although petitioner challenges the termination of her parental rights to E.B. only, the above-mentioned evidence supports the circuit court's termination of petitioner's parental rights to all three children. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with rehabilitative efforts designed to prevent the abuse or neglect of the children. Petitioner continued to test positive for controlled substances by the dispositional hearing and failed to complete out-patient drug treatment or enroll into inpatient drug treatment. She failed to follow through with establishing a

sponsor with NA and failed to regularly attend meetings. She also missed thirty-two of eighty-two drug screens during the proceedings. Most importantly, the record shows that petitioner was pregnant yet continued to abuse drugs. While petitioner cites her continued employment in support of her arguments, she fails to acknowledge that during a dispositional hearing she testified that she did not keep a job longer than a couple of weeks and failed to maintain stable employment. Moreover, testimony established that petitioner was not truthful with the circuit court about her contact with M.M. as evidenced by her criminal conduct with M.M. one month and M.M.'s presence in her home five months after she claimed she stopped contact with him.

Despite petitioner's contention that she should have been granted a less-restrictive dispositional alternative, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights as there was sufficient evidence to find that there was no reasonable likelihood that she could correct the conditions of abuse and/or neglect in the near future and that termination of her parental rights was in the children's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: November 4, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison