**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

*In re* **K.B.-1, K.B.-2, and K.B.-3**

**Nos. 21-0750 and 21-0753** (Wayne County 19-JA-91, 19-JA-92, and 19-JA-93)

**MEMORANDUM DECISION**

Petitioners Mother K.L. (the mother), by counsel Kimberly E. McGann, and Father B.B. (the father), by counsel Michael Meadows, appeal the Circuit Court of Wayne County's August 26, 2021, order terminating their parental rights to K.B.-1, K.B.-2, and K.B.-3.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Kerry A. Nessel, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in (1) terminating their parental rights, (2) denying them post-termination visitation, and (3) admitting incriminating pictures of social media communications.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed an abuse and neglect petition against petitioners alleging that they failed to attend to the children's medical needs, failed to supervise the children, engaged in domestic violence, and abused illicit substances. The DHHR further alleged that petitioners had extensive Child Protective Services ("CPS") histories. In 2008, the mother voluntarily relinquished her parental rights to a child due to her drug use and medical neglect, among other things. In 2010 and 2013, the court involuntarily terminated the mother's parental

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as K.B.-1, K.B.-2, and K.B.-3, respectively, throughout the memorandum decision.

rights to other children who were born drug affected. In 2012, the father voluntarily relinquished his parental rights to a child due to substance abuse. In 2015, K.B.-1 was removed from petitioners' care due to substance abuse, but the child was eventually returned in 2016 after petitioners successfully completed improvement periods. Additionally, the DHHR alleged that when the mother gave birth to K.B-3, she tested positive for tetrahydrocannabinol ("THC"), nonprescribed gabapentin, and Subutex, which caused K.B.-3 to experience severe withdrawal symptoms. The DHHR alleged that the mother left the child at the hospital, resulting in the child's transfer to Lilly's Place, a nonprofit organization that cares for drug-affected infants. The mother further admitted that she no longer had parental rights to three other children and that her drug of choice was heroin or "crack" cocaine. The DHHR alleged that staff members at Lilly's Place contacted the worker and stated that the mother had visited K.B.-3 only once and the father had not seen the child. The staff reported that K.B.-1 and K.B.-2 had also been infants at Lilly's Place, that they were familiar with petitioners, and that they were concerned to send K.B.-3 home with them.

The DHHR filed an amended petition in February of 2020, adding new allegations of extreme medical neglect after K.B.-2's doctor visit while in foster care revealed that she had gastrointestinal problems, severe tooth decay, a lice infestation, an untreated urinary tract infection, eyesight problems, and lacked immunizations. K.B.-2's dentist appointment revealed that she needed extensive restorative dental work due to severe dental care neglect and required surgery. During K.B.-1's doctor visit, the doctor noted multiple deep scars on the child's chest and back, very poor dental health, and a lack of immunizations. K.B.-1 was also diagnosed with gastrointestinal problems and required extensive dental surgery.

In March of 2020, the circuit court held a contested adjudicatory hearing and found by clear and convincing evidence that petitioners severely neglected the children by failing to obtain routine medical and dental care, that K.B.-3 was born drug affected, and that petitioners had an extensive CPS history for the same issues of medical neglect and drug abuse. The court ordered petitioners to participate in supervised visitations and undergo parental fitness and psychological evaluations. Thereafter, petitioners filed motions for post-adjudicatory improvement periods, which the court granted in April of 2020. The terms of the improvement periods required petitioners to fully participate in outpatient drug treatment, submit to regular drug screens, attend all of the children's medical appointments, complete a parental fitness and psychological evaluation, participate in individualized parenting education sessions, and attend all visitations with the children. Further, the mother was required to obtain her general educational development ("GED"), and the father was required to maintain employment. Petitioners were participating in a medication-assisted drug treatment program, which also required therapy and drug screening.

The court held a review hearing in June of 2020 and found that petitioners had been sufficiently compliant with the terms of their improvement periods despite missing multiple drug screens and appointments with their drug treatment programs. The same month, the results from petitioners' parental fitness and psychological evaluations were filed and showed that the parents minimized their drug use issues and medical neglect of the children. The evaluation recommended long-term inpatient drug rehabilitation for the mother and intensive outpatient drug treatment for the father, as both parents were inconsistent with their medication-assisted drug treatment program. By October of 2020, DHHR visitation providers reported concerns with petitioners' inability to properly feed, clean, and supervise the children. That same month, the court found that

petitioners had been "moderately" compliant with services and ordered that their improvement periods continue.

In November of 2020, petitioners moved for a post-dispositional improvement period. At a hearing the same month, the DHHR worker testified that despite the mother's short-term prescription for gabapentin being stopped in September of 2020, she continued to test positive for the substance and that her levels were "the highest they had ever been." Despite this testimony, the court granted petitioners post-dispositional improvement periods in December of 2020. By January of 2021, the court found that the mother had been minimally compliant as she cancelled various appointments and visitations for a multitude of reasons, including the constant excuse that she forgot about the engagements. The mother also missed several drug screens and tested positive for THC and nonprescribed gabapentin. The court found the father to be moderately compliant with the terms of his post-dispositional improvement period.

In preparation for the March of 2021 review hearing, the DHHR submitted a summary outlining the extensive medical needs and various appointments for the children such as speech therapy, vision and hearing check-ups, and doctor visits. The mother attended some of the appointments but missed several or was late. The summary also stated that the mother continued to test positive for nonprescribed gabapentin. The DHHR described concerns with petitioners' lack of valid driver's licenses and lack of a vehicle to transport the children to their various health appointments. The summary also stated that the mother continued to feed the children dairy products despite knowing that they have been diagnosed as lactose-intolerant since the inception of the case.

At the status review hearing in March of 2021, the court found the mother minimally compliant and the father substantially compliant as he continued to test positive only for prescribed Suboxone and continued his employment. In April of 2021, petitioners moved for an extension to their post-dispositional improvement periods. At a dispositional hearing held the same month, the DHHR worker testified that the mother had been removed from an outpatient drug treatment program in April of 2020 due to purchasing nonprescribed Suboxone off the street. The mother enrolled into another outpatient program but left that program in July of 2020. However, that same month, the mother enrolled into a third outpatient drug treatment program and remained in the program. The worker also stated that the father had failed to provide proof of employment and had missed thirty-seven drug screens, despite having the drug testing center accommodate his alleged work schedule. Further, the father tested positive for THC in November of 2020. The worker stated that petitioners obtained a car, but had no valid driver's license, and that the father took the mother to obtain illegal gabapentin off the street. In the worker's opinion, petitioners had not addressed the severe medical neglect issues as the father missed appointments due to his alleged work and the mother missed many appointments despite having no other obligations. The worker opined that the mother did not prioritize the children's medical needs. After hearing the evidence, the court reluctantly granted petitioners extensions to their post-dispositional improvement periods.

The foster parents moved to intervene in May of 2021 arguing that the children had been in their care for the previous sixteen months. The court granted the foster parents' motion to intervene in July of 2021. According to the DHHR report submitted prior to the final dispositional hearing, the worker reported that she received a tablet from the foster mother containing social

3

media messages showing the petitioners engaging in drug trafficking. The worker reported that she confronted petitioners and they admitted that the messages were their communications but stated that the messages were "misconstrued." The father admitted to obtaining additional nonprescribed Suboxone. When the worker asked the mother about her positive drug screens for nonprescribed gabapentin, the mother claimed that her blood sample must have been "mixed up" with another person's sample. The DHHR concluded that its recommendation was to terminate petitioners' parental rights.

In August of 2021, petitioners filed a joint motion for a second extension to their post-dispositional improvement periods. The same month, the circuit court held a final dispositional hearing, during which the intervening foster mother testified that the children had been in her care for a year-and-a-half. She explained the circumstances surrounding the social media messages on the children's iPad tablet. The foster mother stated that she turned the device over to the DHHR worker, who kept the device for approximately a day, then returned the device to the foster mother.

The DHHR worker testified that when she received the tablet, she took pictures of the screen showing various incriminating social media communications and then produced those photographs as discovery to the parties. When the DHHR's counsel moved for the photographs to be admitted into evidence, the guardian did not object, but petitioners objected on the basis that the photographs were hearsay. Petitioners also cited that the participants in the social media communications did not testify. The court overruled petitioners' objection, finding that many of the messages were authored by the mother, who admitted that she was a party to those communications to the DHHR worker, and as such, these communications were party-opponent admissions and did not constitute hearsay.

On cross-examination by the intervening foster parents, the worker stated that the mother failed to obtain her GED and the father failed to verify his employment and income despite being court ordered to do so on several occasions. The worker also stated that the children were special needs as they have behavioral therapy appointments, vision appointments, speech therapy appointments, hearing appointments, and surgeries, but petitioners had no valid driver's license or independent means to get the children to these monthly appointments. The worker also explained that the father was on the highest prescribed dose of Suboxone, which would explain why he did not request that his dose be increased at the clinic and instead sought additional nonprescribed Suboxone off the street. Regarding the mother, the worker stated that she tested positive for nonprescribed gabapentin on July 9, 2021, and July 30, 2021, via blood draw drug testing.

In closing, the guardian adamantly opposed petitioners being granted post-termination visitation due to their deceptive behaviors and failure to address their drug addictions. At the conclusion of the dispositional hearing, the court found that petitioners failed to comply with drug screening by missing screens or testing positive for illicit substances. The father had failed to provide proof of his alleged employment and the mother failed to obtain her GED. The court denied petitioners' motion for a second extension to their post-dispositional improvement periods. Ultimately, the court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the future and that termination of petitioners' parental rights was necessary for the children's welfare. The circuit court denied post-termination

visitation and terminated petitioners' parental rights by order entered on August 26, 2021. Petitioners now appeal this order.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioners argue that the circuit court erred in terminating their parental rights rather than granting them additional time to address the conditions of abuse and neglect. According to petitioners, they attended hearings, multidisciplinary team meetings, supervised visitations, and were substantially compliant with the terms of their improvement periods except for missing some drug screens and testing positive for THC and nonprescribed medications. As such, petitioners argue that the circuit court prematurely terminated their parental rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "No reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* at § 49-4-604(d).

Contrary to petitioners' characterization of the record, petitioners were largely "minimally" or "moderately" compliant with the terms and conditions of their improvement periods as they regularly failed to comply with drug screening, missed appointments with providers, and generally missed other obligations required of their outpatient drug treatment programs. The record shows that the mother enrolled into three separate outpatient drug treatment programs and continued to abuse gabapentin throughout the proceedings. Despite the mother's psychological evaluation's recommendation that she complete long-term inpatient drug rehabilitation due to her extensive history of severe addiction, the mother refused and insisted on bouncing from one medically-assisted drug treatment program to the next, while continuing to abuse gabapentin and Suboxone.

---

[2]As both parents' parental rights were terminated below, the permanency plan for the children is adoption by the same foster family.

Regarding the father, the court found that he was more compliant with the terms and conditions of his improvement period than the mother. However, the record shows that the father failed to submit to drug screens approximately half of the time and entered two separate outpatient drug treatment programs, but did not complete them. Finally, the record revealed that the father had "maxed out" his dose of Suboxone at his program and sought out additional nonprescribed Suboxone off the street. A comprehensive review of petitioners' post-adjudicatory improvement periods, post-dispositional improvement periods, and extensions thereof, clearly shows lackluster compliance and a complete failure to address the conditions of abuse and neglect.

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected because petitioners demonstrated an "inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id*. They continued to abuse Suboxone, THC, and gabapentin during all of their improvement periods and petitioners concede this drug use. Most importantly, petitioners failed to show that they would prioritize the children's serious health issues, as they never obtained driver's licenses or any independent means to transport the children to their numerous health appointments. The record shows that the father was largely excused from attending the children's health appointments, but the mother often missed appointments, was late, or just stated that she forgot about them, despite not working or having other obligations. Additionally, the mother continued to feed K.B.-3 dairy products despite being told that the child became very ill after ingesting such foods and failed to properly supervise the children during visits.

While petitioners participated in some services and minimally complied during much of the case, they appeared to have performed the bare minimum to continue with the granting of improvement periods and increased visitations. Petitioners claim that they could have corrected the conditions of abuse and neglect with more time, but they ignore the statutory limits for improvement periods. *See* W. Va. Code § 49-4-610 ("no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits."). By the dispositional hearing, the children had been in the intervening foster parent's care for a year-and-a-half, and the court found no compelling circumstances to extend petitioners' improvement periods yet again. Accordingly, we find no error in the circuit court's termination of petitioners' parental rights.

Additionally, petitioners argue that the circuit court erred in denying them post-termination visitation because they shared bonds with the children. Petitioners also contend that the court made this decision absent a showing that it was in the children's best interests. We find petitioners' arguments unavailing.

In regard to post-termination visitation, we have previously held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has

6

been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court considered the guardian's vehement request that petitioners be denied post-termination contact in light of their deception and continued substance abuse. Although the record supports the finding that K.B.-1 and K.B.-2 were bonded with petitioners, there was no evidence to support that it was in their best interest to continue contact with them. Further, at the time of the dispositional hearing, K.B.-3 had lived his entire life with the foster parents and had no bond with petitioners. Accordingly, we find no error in the circuit court's denial of petitioners' motion for post-termination visitation with the children.

Finally, petitioners argue that the circuit court erred in admitting incriminating pictures of social media communications.[3] Petitioners at times mention "other third parties" but it is unclear what petitioners attempt to address here as they concede that their only objections below were that the admitted photographs of social medica communications were hearsay. The court permitted these statements by petitioners to be admitted after ruling that this evidence did not violate Rule 802 of the West Virginia Rules of Evidence that prevents the admission of hearsay evidence.

This Court has held that

"[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). In their brief, petitioners simply state that the circuit court "ruled that the images on the ipad [sic] were admissible as an exception to the

---

[3]Regarding petitioners' argument of any alleged violations of West Virginia Code § 62-1D-6, there is no record of any objection by petitioners that the admitted photographs of social media communications were illegally intercepted or that their admission otherwise violated the statute. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

hearsay rule as statements of party opponents" and that this ruling was "clearly erroneous."[4] However, petitioners make no argument or cite any authority to support their argument that the circuit court erred in admitting the photographs pursuant to Rule 801(d)(2) of the West Virginia Rules of Evidence. Indeed, petitioners fail to take the basic step of explaining how this evidence constituted hearsay or otherwise analyze the application of the Rules of Evidence to the circuit court's ruling. As such, petitioners' argument is wholly unsupported, and we decline to find error in the circuit court's evidentiary ruling below. *See* W. Va. R. App. P. 10(c)(7) (requiring arguments to exhibit "clearly the points of fact and law presented," cite the authorities relied on, and "contain appropriate and specific citations to the record," and that the "Court may disregard errors that are not adequately supported by specific references to the record on appeal.").

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 26, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

[4]West Virginia Rule of Evidence 801(d)(2) specifically excludes from hearsay an opposing party's statement under certain circumstances, including when the statement "was made by the party in an individual . . . capacity."