**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **K.H.-1, Z.H., N.H., C.H., and W.H.**

**No. 24-39** (Greenbrier County CC-13-2023-JA-47, CC-13-2023-JA-48, CC-13-2023-JA-49, CC-13-2023-JA-50, and CC-13-2023-JA-51)


**MEMORANDUM DECISION**


Petitioner Father K.H.-2[1] appeals the Circuit Court of Greenbrier County's December 22, 2023, order terminating his parental rights to K.H.-1, Z.H., N.H., C.H., and W.H., arguing that the circuit court erred by admitting the children's recorded Child Advocacy Center ("CAC") interviews into evidence rather than compelling the children to testify, denying his various motions, and ordering him to pay child support.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2023, the DHS filed a petition alleging that the petitioner physically and sexually abused the children and engaged in domestic violence against their mother. Prior to the petition's filing, the children participated in CAC interviews in which they all disclosed experiencing physical, emotional, and mental abuse at the hands of the petitioner and witnessing the petitioner engage in domestic violence against their mother. Additionally, at least one child disclosed sexual abuse by the petitioner. According to the DHS, the petitioner's adult daughter disclosed being sexually abused by the petitioner throughout her childhood. The DHS further alleged that the mother previously obtained a domestic violence protective order against the petitioner after a

---

[1] The petitioner appears by counsel Martha J. Fleshman. The West Virginia Department of Human Services appears by Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Denise Pettijohn appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, one of the children and the petitioner share the same initials, so we refer to them as K.H.-1 and K.H.-2 respectively.

1

physical altercation where he grabbed her around the neck. The DHS noted that the Child Protective Services worker who investigated the allegations discovered medical reports that corroborated the children's disclosures of physical abuse.

In August 2023, the petitioner filed a motion to compel the children to testify at the adjudicatory hearing. The court considered the motion at a subsequent hearing during which the DHS and the guardian argued that the children should not be compelled to testify and that the CAC interviews were admissible pursuant to the West Virginia Rules of Evidence. In support, the DHS presented several witnesses, including the CAC interviewers, who testified to their education, certifications, and interview techniques. One interviewer stated that she had worked for the CAC for under one year, and the other interviewer stated that she had worked for the CAC for around four years and had been named executive director approximately one year prior. When questioned by the petitioner's counsel about interview practices, one interviewer explained that the protocol was designed so that the children only had to recount the abuse one time as opposed to repeatedly retelling the events, resulting in further trauma. The petitioner presented no evidence or witnesses, and his counsel merely argued that the interviews should be excluded as evidence. The petitioner further argued that the children should be compelled to testify because the interviews were untrustworthy, as the interviewers lacked experience, and the children answered "I don't know" at certain points during their interviews.

In ruling on the petitioner's motion and the admissibility of the CAC interviews, the court discussed each factor of Rule 807(a) of the West Virginia Rules of Evidence at length on the record.[3] First, the court found that the CAC interviews were trustworthy, as they were performed by a neutral third party and videotaped. Second, the interviews were clearly for the purpose of proving a material fact. Third, the court found that unless live testimony was offered, the interviews were "by far, the most reliable and probative evidence that could be offered." Fourth, the court found that admission of the interviews was in accordance with the Rules of Evidence and would serve the interests of justice. Finally, the court found that the petitioner was afforded notice as required by Rule 807(b). The court took care to note that the petitioner did not challenge the interview techniques used and made no effort to point to any particular deviation from best practices. The court explained that the "mere fact that the interviewers have only recently entered into this vocation does not render the interview[s] suspect, particularly where the [petitioner] had the opportunity to point out any defects in their interviewing techniques." As such, the court found that the petitioner failed to rebut the presumption that the potential psychological harm to the children outweighed the necessity of their testimony, denied the motion to compel the children to testify, and concluded that the interviews were admissible.

In September 2023, the petitioner filed a "Motion to Preserve Due Process Rights" and a motion to continue the adjudicatory hearing. In support of his motions, the petitioner alleged that he was unable to discuss the matter with a potential witness, the mother's father, because the mother improperly discouraged her father from discussing the case with the petitioner. However, the court denied the petitioner's motion to preserve due process rights, noting that Rule 3.4(f) of

---

[3] The text of Rule 807(a) of the West Virginia Rules of Evidence is quoted below, beginning on page 5.

the West Virginia Rules of Professional Conduct permits a lawyer to request that a client's family member refrain from voluntarily giving relevant information to another party if the lawyer reasonably believes that family member's interest would not be adversely affected by doing so. The court found that the petitioner failed to present any authority to "contravene or supersede" that rule and noted that the petitioner was free to subpoena the witness. In a later order, the court granted the petitioner's motion to continue the adjudicatory hearing.

Thereafter, the petitioner filed motions objecting to and asking the court to discount the children's CAC interviews. In October 2023, the court held a motions hearing at which it denied the petitioner's motions, noting its previous ruling that the interviews were admissible.

Also, in October 2023, the court held an adjudicatory hearing at which the DHS presented testimony from the law enforcement officer who investigated the allegations and requested the children's CAC interviews. The officer testified that the mother reported that the petitioner would threaten her and the children's lives if she were to disclose the abuse. The officer described comparing the children's medical records with their CAC interviews and discovering that the children's disclosures were consistent with the injuries recorded during their hospital visits. Next, the petitioner's adult daughter, who lived in the petitioner's home when she was a child, testified as to the sexual and physical abuse the petitioner inflicted upon her over the course of her childhood. She further described witnessing the petitioner hit her mother and push or throw the other children to the point of bruising. Then, the mother testified that the petitioner engaged in violent behavior from the beginning of their relationship, recounting him pushing her to the point of injury while she was pregnant and withholding money for household needs. She further stated that the petitioner threatened to snap the children's necks and brought a gas can to the front door, threatening to burn the house down with everyone inside. The mother described an incident where the petitioner, in a fit of anger, knocked a shelf onto a child's head, causing the child's head to bleed and resulting in the child being taken to the emergency room. During the petitioner's testimony, he denied all of the allegations and accused the mother and children of conspiring against him. The petitioner confirmed that the shelf incident was due to his angry outburst, but he claimed he did not intend to injure the child. Ultimately, the court found clear and convincing evidence that the petitioner "engaged in a pattern of abusive behavior towards his children, including sexual abuse, domestic violence against the children's mother, [and] physical abuse of the children" and adjudicated the petitioner of abusing and neglecting the children.

The morning of the December 2023 dispositional hearing, the petitioner filed motions to reconsider adjudication, reschedule the adjudicatory hearing, reconsider the petitioner's motion to compel the children to testify, and continue the dispositional hearing. At the hearing, the court took judicial notice of the evidence and testimony presented throughout the proceedings. The court heard the petitioner's motion for reconsideration, but declined to reopen adjudication, and ultimately denied the motion. The court also denied the petitioner's motion for a continuance to reconsider compelling the children to testify. The court explained that the evidence presented at the adjudicatory hearing was "extensive and compelling" and there was "no indication that any [additional] evidence would be sufficient to overcome the evidence of abuse and neglect previously presented." Based upon the petitioner's failure to acknowledge any conduct constituting abuse or neglect, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected, and termination of his parental rights was in

3

the children's best interest. Ultimately, the court terminated the petitioner's parental rights. The court also found that the petitioner was able to work full-time and earn income at least equaling the minimum wage and, accordingly, attributed income of $1,516.67 per month to the petitioner. The court then used this figure to calculate child support pursuant to West Virginia Code § 48-13-403, resulting in a child support obligation of $558.46 per month, which the court ordered the petitioner to pay. The court noted that the petitioner was on home confinement due to a separate criminal proceeding, but that he did not "[seek] approval from the home confinement program to leave his home for purposes of applying for work, job interviews, or other efforts to obtain employment." It is from the dispositional order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

## Admissibility of the Children's CAC Interviews

The petitioner first argues that the court erred by admitting the children's CAC interviews into evidence rather than compelling the children to testify. He asserts that the CAC interviews were inadmissible under the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and the West Virginia Rules of Evidence. At the outset, we note that the West Virginia Rules of Procedure of Child Abuse and Neglect Proceedings establish "a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony and the court *shall* exclude this testimony if the potential psychological harm to the child outweighs the necessity of the child's testimony." W. Va. R. P. for Child Abuse and Neglect Procs. 8(a) (emphasis added). Here, the petitioner failed to present any evidence or witnesses to rebut this presumption. In the absence of any rebuttal evidence, the circuit court specifically found that the potential psychological harm to the children outweighed the necessity of their testimony and the court was, therefore, obligated to exclude the children's testimony.[5] As such, we conclude that the circuit court did not err in denying the petitioner's motion to compel the children's testimony.[6]

_____

[4] The children's permanency plan is to remain in the nonabusing mother's care.

[5] To support his argument on appeal, the petitioner asserts that the court should have continued the adjudicatory hearing until the children's psychological evaluations became available before ruling on the admissibility of the CAC interviews. However, "[w]hether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *In re Tiffany Marie S.*, 196 W. Va. 223, 235, 470 S.E.2d 177, 189 (1996). Moreover, the petitioner cites to no authority entitling him to a continuance nor any authority that a psychological evaluation is a prerequisite to the circuit court's ruling on the admissibility of the CAC interviews. As such, we decline to address this portion of the petitioner's argument. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument clearly exhibiting the points of fact and law presented . . . and *citing the authorities relied on*." (emphasis added)).

[6] The petitioner also argues that the probative value of the children's CAC interviews was less than that of their live testimony. However, the court was not obligated to consider the probative value of the interviews because it had already determined that it was required to exclude the

4

Further, the petitioner argues that the circuit court erred by admitting the children's CAC interviews because they were hearsay not subject to an exception. We disagree. When addressing a circuit court's evidentiary determinations on appeal, we note that

> [t]he West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995). Rule 807 of the West Virginia Rules of Evidence provides as follows:

> **(a) In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> **(1)** the statement has equivalent circumstantial guarantees of trustworthiness;
>
> **(2)** it is offered as evidence of a material fact;
>
> **(3)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> **(4)** admitting it will best serve the purposes of these rules and the interests of justice.
>
> **(b) Notice.** The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

We have previously considered these five criteria and concluded that children's recorded interviews were admissible in similar circumstances. *See In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014) (determining that children's videotaped interviews fell under the residual exception to the hearsay rules and only the circuit court could determine the trustworthiness of those

---

children's testimony. After setting out when exclusion of children's testimony is required, Rule 8(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings goes on to explain that the court "*may* exclude a child's testimony if . . . the child's testimony is not more probative on the issue than the other forms of evidence presented." *Id.* (emphasis added). Because the court determined it was required to exclude the testimony, no further inquiry into the permissive portion of the rule was required, and the petitioner's argument must fail.

interviews);[7] *In re A.E.*, No. 19-0812, 2020 WL 2043320 (W. Va. Apr. 28, 2020) (memorandum decision) (concluding that an interview performed by a child services agency and attested to by the interviewer was trustworthy under Rule 807 of the West Virginia Rules of Evidence). The petitioner primarily attempts to attack the trustworthiness of the children's CAC interviews, claiming that there was no guarantee of trustworthiness because the interviewers were inexperienced.[8] However, the circuit court addressed the interviewers' experience and found that it had no impact on the trustworthiness of the children's statements, especially in light of the petitioner's failure to challenge the practices employed by those interviewers during the CAC interviews. The petitioner also argues that the admission of the interviews did not comport with the general purpose of the rules of evidence and the interests of justice. However, just as in *In re J.S.*, the court below found that admission of the interviews did comport with the rules of evidence and the interests of justice "considering the restrictions on taking a child's testimony under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect." 233 W. Va. at 407, 758 S.E.2d at 760. As such, the circuit court correctly found that the children's recorded interviews met each of the five criteria set forth in Rule 807 and did not abuse its discretion in admitting the recordings.[9]

**Denial of the Petitioner's "Motion to Preserve Due Process Rights"**

---

[7] We note that, at the time *In re J.S.* was decided, the residual hearsay exceptions in the West Virginia Rules of Evidence were contained in Rules 803 and 804. Now, those same exceptions are contained within Rule 807, consistent with the Federal Rules of Evidence. *See* W. Va. R. Evid. 803(24) (noting that the residual exceptions were transferred to Rule 807); W. Va. R. Evid. 804(7) (noting that the residual exceptions were transferred to Rule 807).

[8] The petitioner also asserts that because the conversations between the interviewers and children in the waiting room, occurring prior to the interviews, were not recorded and made part of the record, there is "no guarantee that the interviewer[s] did not make suggestions to the children, inadvertent or otherwise, or even introduce certain topics that [they] wanted [the children] to cover in the interview." However, the petitioner cites to no facts to support this accusation. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument exhibiting clearly the points of fact . . . and citing the authorities relied on."). Moreover, the interviewers testified that the pre-interview conversations with the children were administrative in nature such as introducing themselves and providing the children with "fidget toys." As such, we decline to consider this argument.

[9] Although the petitioner argues primarily about the admissibility of the children's CAC interviews, his argument is founded upon his assertion that the children were lying. In short, the petitioner disputes the credibility of the children's interviews. We have long held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). The court considered the testimony of multiple witnesses, medical records, and other evidence in conjunction with the children's CAC interviews. Based upon this variety of evidence, the court made certain credibility determinations that we will not review on appeal.

Next, the petitioner argues that the circuit court erroneously denied his "Motion to Preserve Due Process Rights" in which he demanded that the court direct the mother "not to interfere with [his] right to talk with a witness and have him come to Court to testify."[10] However, the court considered and ultimately rejected the motion because the petitioner provided no authority to support his demands. To the contrary, Rule 3.4(f) of the Rules of Professional Conduct provides that

> [a] lawyer shall not:
>
> . . . .
>
> (f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
>
> (1) the person is a relative or an employee or other agent of a client; and
>
> (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

In fact, the court noted that under this rule, the mother's lawyer was expressly permitted to request that a relative of the mother refrain from voluntarily giving relevant information to another party if the mother's lawyer reasonably believed that the relative's interests would not be adversely affected by doing so. The court found that the petitioner presented no authority to "contravene or supersede" the rule and, critically, could have subpoenaed the witness and produced his own evidence.[11] Thus, we find no error in the decision of the circuit court.

### Denial of the Petitioner's Motion for Reconsideration

The petitioner also argues that the court improperly denied his motion for reconsideration of adjudication in which he again requested that the court compel the children to testify. However, there is no legal authority for a "motion for reconsideration" under these circumstances, as the

---

[10] The petitioner supports this argument by asserting that the circuit court erred by refusing to grant his motion for a continuance. However, the court granted the petitioner's motion to continue and did, in fact, continue the hearing from September 12, 2023, to October 6, 2023. Thus, this argument is meritless.

[11] The petitioner complains that he did subpoena the witness, but the witness failed to appear. However, the court explained in its dispositional order that the petitioner's subpoena was not properly served upon the witness and contained an inaccurate address. The court further explained that despite the witness's failure to appear, the petitioner failed to enforce the subpoena or request a continuance for the purposes of securing the witness's testimony. As such, we decline to consider the petitioner's unpreserved claim on appeal. *See Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.").

7

West Virginia Rules of Civil Procedure regarding motions to alter, amend, or seek relief from judgment do not apply to abuse and neglect proceedings. See Syl. Pt. 2, *Powderidge Unit Owners Ass'n v. Highland Props, Ltd.*, 196 W. Va. 692, 474 S.E.2d 872 (1996) (holding that motions for reconsideration will be considered, depending on the time of filing, to be either Rule 59(e) or 60(b) motions); W. Va. R. Civ. P. 81(a)(7) (providing that Rules 59 and 60 regarding motions to alter, amend, or seek relief from judgment do not apply to abuse and neglect cases). Thus, the petitioner's motion for reconsideration below was improper. Despite this, the court found that, even if it disregarded the children's CAC interviews entirely, the testimony adduced at the adjudicatory hearing supported the petitioner's adjudication. Accordingly, the petitioner's motion was improper, the circuit court was under no obligation to consider it, and the court's denial of the motion was not erroneous.

**Imposition of Child Support**

Finally, the petitioner argues that the circuit court erroneously imposed a child support obligation upon him because he was on home confinement due to a separate criminal proceeding, which made obtaining employment "impossible." At the outset, we note that "[a] circuit court terminating a parent's parental rights pursuant to [West Virginia Code 49-4-604(c)(6)], must ordinarily require that the terminated parent continue paying child support for the child, pursuant to the Guidelines for Child Support Awards found in W. Va. Code, § 48-13-101, et seq. [2001]." Syl. Pt. 2, in part, *In re Ryan B.*, 224 W. Va. 461, 686 S.E.2d 601 (2009). In order to calculate child support pursuant to those guidelines, the court must first determine the parent's monthly gross income which includes "[a]ttributed income of the parent, calculated in accordance with the provisions of section 1-205." W. Va. Code § 48-1-228(b)(5). "[A]ttributed income means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, or is working below full earning capacity, or has nonperforming or underperforming assets." W. Va. Code § 48-1-205(a). The circuit court may attribute income to a parent

> if the court evaluates the specific circumstances of the parent to the extent known, including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, physical and mental health, criminal record, and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

*Id.* Here, the court considered the petitioner's employment history, the terms of his home confinement, and his failure to seek approval from home confinement personnel to even attempt to obtain employment. Based upon these factors, the court explicitly found that the petitioner was able to work full time and earn at least minimum wage and attributed that amount of income to him, as permitted by West Virginia Code § 48-1-205(a). As such, we decline to reverse the circuit court's decision on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 22, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: May 13, 2025


**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV